UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LATONYA MARIE WALKER,<br><br>    Plaintiff,<br><br>V.<br><br>EQUIFAX INFORMATION SERVICES LLC, et al.,<br><br>    Defendants. | Civil Action No. 5: 25-035-DCR<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Compel Arbitration. [Record No. 35] Experian's motion will be granted because: (1) a valid agreement to arbitrate exists and (2) the contract delegates its own arbitrability to an arbitrator.

**I.**

Experian alleges that Plaintiff LaTonya Marie Walker is a member of CreditWorks, "the name of Experian's credit monitoring service provided by [Experian's] affiliate, ConsumerInfo.com, Inc. ('CIC') (which does business as Experian Consumer Services ('ECS'))." [Record No. 35, p. 3] It further contends that, by enrolling in CreditWorks, Walker is subject to its Terms of Use and, by extension, its Arbitration Agreement. [*Id.*] Finally, the Arbitration Agreement defines ECS to include its affiliates, one of which is Experian. [*Id.*] Walker does not dispute these relevant facts.

According to Experian, Walker enrolled in CreditWorks by submitting two online forms. [*Id.*, p. 4] First, Walker input her name, physical address, email address, and phone

- 1 -

number. [*Id.*, pp. 4-5]  She then clicked "submit and continue" and proceeded to the second form. [*Id.*, p. 5]  There, Walker was then directed to a screen that prompted her to provide her date of birth, social security number, and a username and password. [*Id.*]  "Immediately below the boxes to enter and confirm her password, was the following disclosure: 'By clicking 'Submit Secure Order': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy.'" [*Id.*]  The words "Terms of Use Agreement" were displayed in blue, and contained a hyperlink that, when clicked, would have directed Walker to the complete text of the agreement. [*Id.*]  By clicking "submit secure order," Walker agreed to the Terms of Use Agreement.  [*Id.*]

Finally, the terms contained a section entitled "Amendments" which included language that binds Walker to updated Terms of Use every time she accessed, ordered, or used any of the Services or Websites mentioned in the agreement.

## II.

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2.  If a party who signs an arbitration contract refuses to arbitrate, the aggrieved party may file a motion with the Court to compel arbitration.  9 U.S.C. § 4.

In determining whether the parties agreed to arbitrate, the Court examines arbitration language in a contract in light of the strong federal policy in favor of arbitration and resolves any doubts about the parties' intentions in favor of arbitration.  *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006).  Despite the strong policy in its favor, arbitration under the FAA is "a matter of consent, not coercion." *Volt Info. Scis., Inc.. v. Bd. of Trs. Of*

*Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  Although ambiguities in the language of the agreement will be resolved in favor of arbitration, the clear intent of the parties will not be overridden simply because the policy favoring arbitration is implication.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

In determining whether parties have agreed to arbitrate a certain matter, courts generally apply ordinary state-law principles that govern the formation of contracts.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  And courts apply the summary judgment standard under Rule 56 of the Federal Rules of Civil Procedure when ruling on a motion to compel arbitration.  *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (stating "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard").  If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration.  However, if the court finds that the validity of the arbitration agreement is " in issue," the matter must proceed to trial to resolve the question.  *Id.*  Finally, "when the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract, even if the court thinks that the arbitrability claim is wholly groundless."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 63 (2019).

### III.

In support of its motion, Experian cites a three-page great wall of cases at which China's Qin dynasty might stop to marvel.  [*See* Record No. 35, pp. 6-8]  But Walker asserts a compelling counterpoint: the terms and conditions she agreed to state that "any dispute you may have with us arising out of the Fair Credit Reporting Act (FCRA) relating to the information contained in your consumer disclosure or report, including but not limited to

claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate." [Record No. 35-1, p. 17] Experian counters that, even if the arbitrability of Walker's claims is questionable under this provision, because "the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 586 U.S. 63, 71.

First, the parties formed a valid contract. Although claiming that Experian failed to attach a *signed* agreement, Walker does not dispute that she clicked the "submit secure order" button after entering her information, or that was she was provided the opportunity to read through the Terms of Use Agreement. *See Univ. of Ky. v. Regard*, 670 S.W.3d 903, 914 (Ky. 2023) (finding that not all documents need be signed for incorporation to be found when a document "is not in doubt"). The Terms of Use Agreement that Walker acknowledged in 2017 provided: "ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites, except any disputes or claims which under governing law are not subject to arbitration." [Record No. 35-1, p. 17] Walker made a choice to accept these terms by proceeding to click "submit secure order." Finally, in Kentucky, "[t]here is no general requirement that contract terms be conspicuous to be enforceable." *Nu-X Ventures v. SBL, LLC*, 568 F. Supp. 3d 829, 836 (W.D. Ky. 2021). This undisputed evidence indicates that the parties agreed to arbitrate, at least generally.

Walker dedicates the majority of her response contesting whether the claims asserted in this action fall within the scope of the arbitration agreement. More specifically, she contends that the Terms of Use to which she agreed in 2017 provide an unambiguous exception for claims under the Fair Credit Reporting Act. [*See* Record No. 35-1, p. 17 ("[A]ny dispute you may have with us arising out of the Fair Credit Reporting Act ("FCRA") relating to the

information contained in your consumer disclosure or report, including but not limited to claims for alleged inaccuracies, shall not be governed by this agreement to arbitrate.").] Experian argues that by incorporating the American Arbitration Association's ("AAA") rules, the contract delegates issues of arbitrability to the arbitrator. Alternatively, it argues that Walker consented to updates that removed the FCRA exclusion when she continued to use Experian's services after January 2019. [Record No. 41, p. 4] But if "the parties' contract delegates the arbitrability question to an arbitrator … a court possesses no power to decide the arbitrability issue." *Henry Schein*, 586 U.S. at 68. Because the contract in issue here delegates the arbitrability question, the Court need not address Experian's second argument.

"To start, the AAA Rules clearly empower an arbitrator to decide questions of 'arbitrability'—for instance, questions about the 'scope' of the agreement. And it's long been settled that parties can incorporate outside documents into a contract if their agreement says as much." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020). In *Blanton*, the United States Court of Appeals for the Sixth Circuit held that "the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Id.* at 846.

The Terms of Use Agreement incorporated the AAA rules, which leave arbitrability to the arbitrator, and not the Court. [*See* Record No. 35-1, p. 18 ("The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA'), as modified by this Agreement, and will be administered by the AAA.").] Thus, notwithstanding Walker's legitimate concern about arbitration as a mode

of dispute resolution relative to the more straightforward procedures of Article III Courts, this Court has no choice but to compel arbitration.

Finally, Experian's proposed order references a stay of this case. [Record No. 35-2] However, Defendants Trans Union, LLC and Equifax Information Services, LLC have not filed motions to compel arbitration or opined on a stay of the matter. Accordingly, the other defendants will be given an opportunity to respond to the question of whether the entire proceeding should be stayed pending the arbitration of Walker's claims against Experian.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     Defendant Experian Information Solutions, Inc.'s Motion to Compel Arbitration [Record No. 35] is **GRANTED**.

2.     Within 21 days, Defendants Trans Union, LLC and Equifax Information Services, LLC are directed to respond to the question of whether they object to a stay of these proceedings. Plaintiff Walker may file a reply within 14 days of service of the Defendants Trans Union, LLC and Equifax Information Services, LLC's responses in accordance with the standard briefing deadlines set forth in Local Rule 7.1(c).

Dated: June 4, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky